**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No. 26-CR-063 (ACR)** |
| | : | |
| **v.** | : | |
| | : | |
| **STEVEN WALKER,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. This memorandum, together with such evidence as may be presented at the sentencing hearing and the government's allocution at the time of sentencing, is intended to outline to the Court relevant matters relating to what the government believes is an appropriate sentence in this case. To inform its allocution, the government has reviewed the application of the advisory Sentencing Guidelines; the Final Presentence Reports ("PSR") prepared by U.S. Probation Officer ("USPO") Ms. Haley Spicer, *see* PSR ECFs No. 30; and USPO Ms. Spicer's sentencing recommendation, *see* ECF No. 31; the relevant factors set forth in 18 U.S.C. § 3553; and the Defendant's plea of guilty in this case. Based on that thorough and comprehensive review, and consistent with the plea agreement, the government agreed to cap its allocution at the low end of the Sentencing Guidelines range as ultimately calculated and adopted by the Court followed by 36 months of Supervised Release. *See* Plea Agreement ECF No. 24 ¶¶5-6.

## I. INTRODUCTION

On April 27, 2026, the Defendant pleaded guilty to a criminal Information charging Count

One Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), and Count Two Destruction of Federal Property, in violation of 18 U.S.C. § 1361.

## II. FACTUAL BACKGROUND

On September 28, 2025, at approximately 2112 hours, in front of 3271 Stanton Road Southeast Washington, D.C. Officers from the Seventh District Special Missions Unit (SMU) were working on the evening tour of duty. Officers were wearing full police uniforms and utilizing unmarked vehicles which were equipped with red and blue emergency lights and sirens. Officers were working with the US Marshalls Service, Homeland Security Investigations (HSI), U.S. Customs and Border Protection, and the Federal Bureau of Investigations (FBI), who were wearing plain clothes and utilizing unmarked police cruisers.

While officers were driving in the 3200 block of Stanton Rd. SE Washington, DC, they observed Steven Walker ("the Defendant") seated on an all-terrain style motorcycle. This motorcycle was on the public sidewalk and did not have a tag affixed to it. The motorcycle was parked in front of 3271 Stanton Rd. SE. Officers saw that the motorcycle was running with the front headlight illuminated. At that time, officers turned their vehicles around to get a better look at the motorcycle because these types of bikes are not commonly parked or driven on the sidewalk.

Officers activated the vehicles' emergency equipment to turn their vehicles around, and as they did so, they observed the Defendant was actively attempting to jump start the motorcycle. As officers approached the Defendant, who was unsuccessful at kick starting the motorcycle, the Defendant jumped off the bike and began running on foot. Officers saw the Defendant run into the gated parking lot of 1556 Alabama Ave. SE. As the Defendant was running from officers, he had

his left arm swinging freely while his right arm was reaching into his groin area. Officers saw the Defendant produced a silver/black handgun from his groin and threw the handgun over the nearby fence. The handgun struck the side of a private home and fell into a grassy area. Moments later, the Defendant turned back towards officers and attempted to run away. Officers gave the Defendant multiple verbal commands to stop. The Defendant attempted to get away from officers by pushing and thrashing his arms towards officers. After a brief struggle, officers were able to detain the Defendant. Subsequently, officers recovered the firearm near 1550 Alabama Ave. SE Washington, DC 20032.

The firearm was recovered and identified as a Black/Silver Bersa firearm, Serial Number: 818795, Model: Thunder 380 loaded with .380 ammunition with 1 in chamber and 7 rounds of ammunition in the magazine. The firearm appeared to be fully functional, able to be fired with one hand, had a barrel of less than twelve inches, and could fire a projectile by means of an explosive.

A NCIC/WALES query of the firearm revealed that the firearm was reported stolen by Charles County Sheriff Office La Plata, Maryland on May 7, 2018 (OCA: 1611334). There are no firearms or ammunition manufacturers or distributors in the District of Columbia, therefore, the firearm and ammunition in this case necessarily traveled in interstate commerce before it was recovered on the Defendant in the District of Columbia.

A review of the Defendant's criminal history revealed that the Defendant was convicted of Robbery While Armed in Prince George's County Maryland in 2008 and Robbery and Unlawful Possession of a Firearm (Prior Conviction) in the Superior Court in Washington, D.C. in 2017. Therefore, at the time the Defendant possessed the firearm and ammunition, he had been convicted

of a crime punishable by imprisonment for a term exceeding one year and had knowledge of that fact.

## III. SENTENCING CALCULATION

### Base Offense Level

Consistent with the plea agreement, the parties agreed that the following Sentencing Guidelines sections apply:

With respect to Count One (violation of 18 U.S.C. § 922(g)(1)), U.S.S.G. § 2K2.1(a)(4)(A) Base Offense Level applies due to the Defendant's status as a prohibited person an offense involving possession of a firearm subsequent to sustaining a conviction for a crime of violence [to wit: Robbery with a Deadly Weapon] has a base offense level of 20, producing a Base Offense Level of 20. Also, the parties agreed that Specific Offense Characteristics: The firearm in the instant offense was reported stolen in Maryland in 2018, accordingly, two levels are added. USSG §2K2.1(b)(4)(A) increase 2 levels. As a result, the parties agreed that the Total Offense Level was 22. The parties also agreed that the Defendant has clearly demonstrated acceptance of responsibility for the offense by pleading guilty. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a). *See* PSR ECF No. 30 ¶24. Moreover, the Defendant has assisted authorities in the investigation or prosecution of the Defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. USSG §3E1.1(b). *Id.* ¶25. The parties agreed in the plea agreement that based upon a total offense level of 19 and a criminal history category of V, the guideline imprisonment range is 57 months to 71 months. *See* Plea Agreement ECF No. 24 ¶4.

The Probation Office's calculations differ from the parties' plea agreement estimations

with respect to defendant's Criminal History score – due to the Probation Office found that the Defendant has 13 criminal history points, establishing a Criminal History Category of VI. Accordingly, the Probation Office determined that the estimated Guideline Range was 63 to 78 months of incarceration, the Probation Office otherwise concurred with the parties' sentencing calculation outlined in the plea agreement. *See* PSR ECF No. 30 ¶104.

**UNITED STATES' ANALYSIS OF THE SENTENCING GUIDELINES**

Even though the Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that the Guidelines provide "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 590 U.S. 38, 49 (2007); *see also United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006) ("*Booker* has not changed how the Guidelines range is to be calculated.") Moreover, the Guidelines' recommended sentencing range will ordinarily "'reflect a rough approximation of sentences that might achieve [18 U.S.C.] § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) (*quoting Rita v. United States*, 551 U.S. 338, 347-50 (2007)); *Dorcely*, 454 F.3d at 376 (noting that "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").

To calculate a Guidelines sentence, a district court must first select the applicable offense guideline and then select the base offense level within that applicable offense guideline. *United States v. Flores*, 912 F.3d 613, 616 (D.C. Cir. 2019). As the D.C. Circuit has long held, this inquiry must include an evaluation of all relevant conduct that could affect the Guidelines calculation.

> In the post-*Booker* world, the court must calculate and consider the applicable Guidelines range but is not bound by it. Under the Guidelines, "the sentencing

> range for a particular offense is determined on the basis of all 'relevant conduct' in which the Defendant was engaged and not just with regard to the conduct underlying the offense of conviction." *Witte v. United States*, 515 U.S. 389, 393 (1995) (citing U.S.S.G. § 1B1.3). Section 1B1.3 details the conduct the sentencing court may consider in determining the applicable Guidelines range and the commentary to that section states, "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S.S.G. § 1B1.3, comment., backg'd. *Dorcely*, 454 F.3d at 375.

Notably, based on the facts of this matter and the Defendant's criminal history, are very significant and concerning – *see* PSRs ECF No. 30 – and the fact that the Defendant was on release status supervision for a violent conviction as noted more fully *infra* – all demonstrates that this Court should sentence within the Sentencing Guidelines Range, however, in light of his acceptance of responsibility, sentence the Defendant to the low end of the Sentencing Guidelines range as ultimately calculated and adopted by the Court followed by 36 months of Supervised Release.

## IV. SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing the Defendant.

### (1) The nature and circumstances of the offense and the history and characteristics of the Defendant.

#### (A) The nature and circumstances of the offense

Here, the nature and circumstances of the offense counsel in favor of a significant term of imprisonment. The nature and circumstances surrounding the charged offense is very troubling. Indeed, the circumstances of the crime here involved Officers seeing the Defendant produced a silver/black handgun from his groin and threw that handgun into the side of private home. The Defendant then continued to actively disregard officers' multiple commands to stop as he persisted in running from the officers. Once officers made contact with the Defendant, he attempted to get

away from officers by pushing and thrashing his arms towards officers. After a brief struggle, officers were able to detain the Defendant; and subsequently, officers recovered the firearm identified as a Black/Silver Bersa firearm, Serial Number: 818795, Model: Thunder 380 loaded with .380 ammunition with 1 in chamber and 7 rounds of ammunition in the magazine.

More broadly, this illegal possession of a loaded firearm and the fact that the Defendant could have combined with the Defendant's prior convictions, is very alarming and posed a significant danger to the officers and our community.

It cannot be overstated that the Defendant actions and possession of a loaded firearm by a convicted felon with Defendant Walker's criminal history and prior convictions are disturbing and extremely dangerous to our community. The increase of urban shootings and violent crimes involving firearms has shown the negative impact that the unregulated flow of firearms can have on a community. Thus, as a threshold matter, the Defendant's possession of a loaded handgun and his violent criminal history on a public street placed the community at risk. *See e.g.*, *United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public): *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2-3 (D.D.C. Sept. 21, 2020) (making the same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a firearm "has the great potential to escalate into violence"). Judges of this Court have warned against discounting the inherent danger associated with loaded firearms. *See, e.g.*, *Blackson*, 2023 WL 1778194, at *7-8 (noting that the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the

gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"), *aff'd*, *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023); *see also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the circumstances even more troubling"), *aff'd* (D.D.C. Nov. 5, 2020). Here, the loaded firearm recovered in this case had many of these frightening characteristics because it was loaded with one round in the chamber and ready to fire. The Defendant's act of throwing the firearm against a private citizen's home also created a risk of accidental discharge – placing innocent community members at risk of physical injury and property damage.

Furthermore, the fact that the Defendant, despite being unable to legally possess a firearm and being on a previously court ordered release status shows that the Defendant obtaining a loaded firearm in this case is very terrifying. In fact, the Defendant could not have possessed the loaded firearm legally due to his status as a felon, and therefore, he must have had an illicit source for the firearm, further demonstrating the potential dangerousness of this Defendant. Indeed, the fact that the Defendant's firearm was stolen proves that the defendant was participating in and supporting the illegal firearms market. Accordingly, the government respectfully avers that the Defendant is a significant danger to the community, and his criminal actions in this matter demonstrate that that the Defendant should be incarcerated as outlined in his plea agreement followed by 36 months of Supervised Release, is in the interests of justice and would punish the Defendant appropriately.

**(B) The history and characteristics of the Defendant**

The Defendant is a 42-year-old man who has previous adult convictions as outlined in the PSR report. The Defendant's prior periods of incarceration and supervision have done little to deter the Defendant's criminal behavior. For example, the Defendant's 2017 conviction for Robbery and Unlawful Possession of a Firearm (Prior Crime of Violence) – (on October 17, 2016, the defendant was armed with a firearm and, as he brandished the firearm, demanded the victim's money and wallet. When the victim stated he did not have any money or a wallet, the defendant yelled, "Give me the bread," and then struck the victim's head approximately four times with the butt of the firearm.) *See* PSR No. 30 ¶35.

Moreover, in the Defendant's 2017 conviction for Receiving Stolen Property $1,000 or More – (on October 23, 2016, the defendant and a co-defendant approached the vehicle of the complainant, the co-defendant pulled out a firearm and tapped it on the driver's window. The complainant opened the driver's door and the co-defendant demanded his personal items. The complainant turned over his cell phone (valued at $600), a credit card (with a credit limit of $500), his keys, and other personal items. Moments later, the co-defendant moved to the back of the vehicle and passed the items to the defendant.) *Id.* ¶34; and in the Defendant's 2008 conviction for Robbery with Dangerous Weapon and Use of a Handgun in Commission of a Felony – (on October 9, 2006, the victim was getting out of her vehicle, an Acura, in New Carrollton, Maryland. She was approached by two black male suspects who both displayed handguns and ordered her to get into the backseat of her vehicle. She was in fear for her life and complied with their demands. The suspects drove her to the Sun Trust Bank in New Carrollton and ordered her to withdraw funds from the ATM. She complied and withdrew $380 in US

currency. The suspects then released her and fled in her vehicle. The vehicle was estimated to be worth $10,000. On October 10, 2006, the suspects were identified as this defendant and another person, and both were arrested in a Chrysler Sebring, which was taken in a carjacking on October 9, 2006.) *Id.* ¶33.

Nevertheless, the Defendant has had ample opportunities and court supervisions that provided him with the resources to rehabilitate himself and contribute to our community. Sadly, the Defendant has chosen not to do so. On the contrary, he has chosen to disregard the court's directives and terms of supervision. Notably, the Defendant has had his supervision revoked in four separate felony convictions: 2003 FEL 7849, 2006 CF3 22533, CT062394X, and 2016 CF3 17409). Here, the Defendant persisted in criminal conduct culminated in his conviction for the instant matter. Thus, the defendant's actions in this case necessitates a significant period of incarceration by this Court.

In making its current sentencing recommendation to the Court, the government has also reviewed the Defendant's Personal and Family Data as outlined in the PSR, which described the Defendant's relationship with his family and family history. *See id*. ¶¶47-60. USPO Ms. Spicer found, *inter alia*, that the Defendant "is a lifelong resident of Washington, DC. Prior to his incarceration, he was residing with his fiancée on Alabama Avenue SE, Washington, DC 20002. He plans to return to this address upon his release. Finally, the Defendant's Substance Abuse backgrounds as outlined in his PSR, revealed the Defendant admitted to at various times using PCP, marijuana, methamphetamine, heroin, and hallucinogenic mushrooms. *Id*. ¶¶71-83.

### (C) The Need to Afford Adequate Deterrence to Criminal Conduct, and the Need to Protect the Public from Further Crimes of Defendant

The Court must also consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct [and] to protect the public from further crimes of the Defendant . . . ." 18 U.S.C. § 3553(a)(2)(B), (D). Importantly, this Court is well aware of the impact that loaded firearms have had on the District of Columbia, and the need to deter that conduct. A sentence that provides both specific and general deterrence is especially important in this case because the Defendant possessed a loaded firearm on a public street in our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the Defendant presents an extreme safety risk to the public."). If our community is to have any hope of stemming the tide of illegal loaded firearms to prevent any more tragedies in our community, the Defendant must be punished accordingly.

Simply put, this pattern of criminal conduct by this Defendant, his violent criminal history, his possession of a loaded firearm in this case, and coupled with his disregard for the terms of supervision in his previous conviction, necessitates a term of incarceration at the low end of the Sentencing Guidelines range as ultimately calculated and adopted by the Court followed by 36 months of Supervised Release. Indeed, a term of incarceration in this case will serve as a specific deterrence for this Defendant and will make clear to him that the repeated recidivism will only result in harsher sentences, and a sentence as outlined herein for this Defendant by this Court offers general deterrence to others by demonstrating to the community that repeated crimes, or possession of illegal loaded firearm will not be tolerated.

**(D) The need to avoid unwarranted sentencing disparities among defendants with similar records**

The goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. As discussed *supra*, this Court should sentence the Defendant to the low end of the applicable guideline term as ultimately determined by the Court followed by 36 months of Supervised Release. Indeed, the government's requested sentence is reasonable, as it strikes the balance between considering the Defendant's background and the facts of this case.

Specifically, the government's recommendation takes into account the additional fact that, at the time of the instant offense, the Defendant was on a prior court ordered supervision for his 2008 Maryland Robbery with Dangerous Weapon and Use of a Handgun in Commission of a Felony conviction. Indeed, despite being given multiple opportunities by other judicial officers in his numerous prior convictions to not commit any additional criminal offenses, the Defendant continued to reoffend and, in the instant cases, acquired and possessed a loaded firearm in our

community. These facts demonstrate that the Defendant was ready, willing, and able to commit another crime against members of the community.

## V. CONCLUSION

For the foregoing reasons, the United States recommends that this Court sentence the Defendant at the low end of the Sentencing Guidelines range followed by 36 months of Supervised Release is appropriate. The government respectfully advances that its recommended sentence would therefore reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: *<u>/s/ Emory V. Cole</u>*
EMORY V. COLE
PA. Bar No. 49136
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Emory.Cole@usdoj.gov